IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RUDY STANKO, individually and on behalf of other prisoners in the Sheridan and Scottsbluff County Jails; | **8:20CV294** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| SHERIDAN COUNTY; MARK OVERMAN, individually; JEFF BREWER, individually; and AARON CONN, individually, as a private attorney, and in his official capacity as County Attorney; | |
| Defendants. | |

Plaintiff, Rudy Stanko ("Stanko"), was a prisoner confined at the county jail in Scotts Bluff County, Nebraska, when he filed his pro se Complaint (Filing 1) on July 23, 2020.[1] Although Stanko has since been released from jail, his Complaint remains subject to initial review under 28 U.S.C. § 1915A for a determination of whether summary dismissal is appropriate. *See Mister v. Obadina*, No. 19-CV-00148-NJR, 2019 WL 1978343, at *1 n. 2 (S.D. Ill. May 3, 2019) ("A Section 1915A review is triggered when the plaintiff is a prisoner at the time of filing the complaint, whether or not the plaintiff is subsequently released from prison." (citing *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 669 n.1 (7th Cir. 2012)).

## I. LEGAL STANDARDS ON INITIAL REVIEW

The Prison Litigation Reform Act ("PLRA") requires the court to conduct an initial review of "a complaint in a civil action in which a prisoner seeks redress from

---

[1] Stanko is not proceeding in forma pauperis.

a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §
1915A(a). On such initial review, the court must "dismiss the complaint, or any
portion of the complaint," it determines "(1) is frivolous, malicious, or fails to state
a claim upon which relief may be granted; or (2) seeks monetary relief from a
defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil
Procedure is to give the opposing party 'fair notice of the nature and basis or grounds
for a claim, and a general indication of the type of litigation involved.'" *Topchian v.
JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins
v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough
factual allegations to "nudge[ ] their claims across the line from conceivable to
plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
("A claim has facial plausibility when the plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is liable for the
misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held
to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal
quotation marks and citations omitted). This means that "if the essence of an
allegation is discernible, even though it is not pleaded with legal nicety, then the
district court should construe the complaint in a way that permits the layperson's
claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d
912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege
facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*,
623 F.2d 1282, 1286 (8th Cir. 1980).

## II. SUMMARY OF COMPLAINT

Stanko complains "the Sheridan County Jail is overcrowded in violation of
Plaintiff's right not to be imprisoned under protection of the cruel and unusual
punishment clause of the 8th Amendment," and further alleges he was retaliated
against "for filing lawsuits and taking prescribed pills." (Filing 1 at 1.) Several other

grievances are also alleged. Named as defendants are: (1) the Sheriff of Sheridan County, Jeff Brewer, who is sued in his individual capacity only; (2) Sheridan County; (3) the Sheridan County Attorney, Aaron Conn, who is sued in both his official and individual capacities; and (4) the Sheriff of Scotts Bluff County, Mark Overman, who is sued in his individual capacity only. (Filing 1 at 2.)

## III. DISCUSSION

Liberally construing Stanko's Complaint, this is a civil rights action brought under 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A. Class Action

As a pro se litigant, Stanko may not represent the interests of others.[2] "Every court that has considered the issue has held that a prisoner proceeding pro se is inadequate to represent the interests of his fellow inmates in a class action." *Coleman v. Newton*, 2009 WL 1936265, at *1 (D. Neb. June 29, 2009) (quoting *Craig v. Cohn*, 80 F.Supp.2d 944, 946 (N.D.Ind. 2000)); *see Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("[I]t is plain error to permit this imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."). Thus, Stanko can only sue on his own behalf.

### B. Prior Litigation Against Sheriff Brewer

On June 24, 2020, Stanko filed a pro se complaint against Jeff Brewer in the District Court of Sheridan County, Nebraska. Stanko amended that pleading on or about June 29, 2020. It was alleged in the amended complaint that Brewer interfered

---

[2] Moreover, in order for Stanko to proceed with his claims, he must have standing. As a general rule, to establish standing a plaintiff must assert his legal rights or interests and not "the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975).

3

with Stanko's access to counsel and the courts and subjected Stanko to unconstitutional conditions of confinement. Brewer removed the action to federal court on July 29, 2020. In a memorandum and order entered on October 8, 2020, the court granted Brewer's motion to dismiss, determining that Stanko's conditions-of-confinement claims were moot insofar as he was seeking declaratory and injunctive relief, and that Brewer was entitled to qualified immunity on Stanko's claims for money damages. *See Stanko v. Brewer*, No. 8:20CV302, 2020 WL 5982062 (D. Neb. Oct. 8, 2020).[3]

As the basis for his § 1983 claims in Case No. 8:20CV302, Stanko alleged that "Brewer, the sole defendant and Sheriff of Sheridan County, Nebraska, was the 'decision maker and manager of the Sheridan County Jail.'" *Id.*, 2020 WL 5982062, at *3. Stanko "sued Brewer in his individual capacity, alleging Brewer denied [him] access to a law library, or the technological equivalent, while he was an inmate at the Sheridan County Jail." *Id.* Stanko "further claim[ed] that after he asked for access to a law library, Brewer 'retaliated' against [him] by: 1) 'throwing [Stanko] in ... solitary confinement and refusing to allow [him] one hour of 'outside exercise;' 2) denying [Stanko] access to his attorney; 3) disallowing [Stanko's] access to a certain book shelf; and 4) prohibiting [Stanko] from reviewing his legal files." *Id.* Stanko "ask[ed] the court to enjoin [Brewer] from prohibiting his access to a law library and from engaging in the alleged retaliatory actions." *Id.*, at *4. "He also request[ed] a declaration that [Brewer's] actions violated the United States Constitution." *Id.* Finally, he demand[ed] a jury trial and a 'minimum of $50,000[.]' *Id.*

Stanko requested "an injunction that would prohibit [Brewer] from restricting [Stanko's] recreational time and that would immediately allow [him] access to legal

---

[3] The court can sua sponte take judicial notice of its own records and files, and facts which are part of its public records. *United States v. Jackson*, 640 F.2d 614, 617 (8th Cir. 1981). Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it. *Id.* The court can also sua sponte take judicial notice of proceedings in other courts if they relate directly to the matters at issue. *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996). *See also Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (courts "may take judicial notice of judicial opinions and public records").

counsel, library resources, and his legal files." *Id.* Stanko also sought "a declaration that [Brewer's] restriction of [Stanko's] requested exercise and access to his legal materials is unconstitutional." *Id.* These claims for relief were dismissed as moot because Stanko was no longer held in the Sheridan County Jail. *Id.* (citing *Pratt v. Corr. Corp. of Am.*, 267 F. App'x 482 (8th Cir. 2008) (holding that claims for injunctive relief and declaratory judgment are moot when prisoner/complainant is no longer in the facility in question)). The court also held that Brewer could not be held personally liable for damages on Stanko's constitutional claims, stating:

> Plaintiff cites the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments as the basis of his claims under 42 U.S.C. § 1983. It is wholly unclear which constitutional provision Plaintiff relies on when claiming a right to recover monetary damages. But irrespective of that ambiguity, he has failed to allege a violation of any clearly established constitutional right.

> a. Interference with Legal Defense

> Plaintiff alleges Defendant unlawfully seized Plaintiff's legal files, failed to provide a law library within the jail, and interfered with Plaintiff's ability to communicate with counsel. To the extent Plaintiff is alleging his legal files were confiscated in violation of his Fourth Amendment rights, "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." … *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). The Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. *Id.* Thus, even if Defendant had "confiscated" Plaintiff's papers, as he apparently alleges, there has been no "clearly established" Fourth Amendment violation to support Plaintiff's § 1983 action.

> Liberally construed, Plaintiff may be alleging Defendant denied Plaintiff's access to the courts…. "For prisoners, meaningful access to the courts 'requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'" *White v. Kautzky*, 494 F.3d 677, 679 (8th

5

Cir. 2007) (quoting *Bounds v. Smith*, 430 U.S. 817, 828, *overruled on other grounds*, Lewis *v. Casey*, 518 U.S. 343, 354 (1996)).

… However, the right to access the courts discussed in *Bounds* did not create some abstract (or absolute) right. *Bounds*, 430 U.S at 828. A prisoner must allege prejudice arising from the lack of a sufficient law library or his legal files; that these alleged violations *actually hindered* his efforts to pursue his legal claims or defenses. *Casey*, 518 U.S. at 349. Plaintiff has not alleged any facts showing he was harmed because he lacked access to a library (or any specific bookshelf or computer), to an attorney, or to any of his legal papers. His claim based on lack of library access and lack of access to his legal documents must be dismissed.

The first amended complaint alleges Defendant denied Plaintiff's access to counsel. But upon review of the Sheridan County Court records, Plaintiff appeared *pro se* in those proceedings. Plaintiff cannot assert Defendant interfered with his right to call "his attorney." Regardless, Plaintiff has not alleged that he was wholly unable to contact parties outside the jail (including "his attorney"). He can send written communications – as he has demonstrated repeatedly in his mailings to the court. His contention that he was prohibited from *telephoning* some unknown legal advisor does not violate any clearly established right. There is no constitutional right to telephone access, as a general matter. And to the extent Plaintiff alleges that Defendant completely barred him from contacting a criminal defense attorney, he has not pleaded a sufficient factual basis to support that contention, or that calling rather than writing to an attorney deprived him of his right to counsel. *Twombly*, 550 U.S. at 570.

Liberally construed, Plaintiff's amended complaint may be attempting to assert a Sixth Amendment claim for denying access to counsel. While a plaintiff may in certain circumstances assert Sixth Amendment violations as a basis for § 1983 suit, Plaintiff's current circumstances do not support such a claim. *Cf. Nordstrom v. Ryan*, 762 F.3d 903 (9th Cir. 2014). For the reasons already discussed, whether asserted as a denial of access to the courts or as a Sixth Amendment violation, Plaintiff's amended complaint fails to state facts supporting a claim that his constitutional rights were violated because he was

unable to communicate with legal counsel. The amended complaint does not allege facts supporting a claim that Plaintiff ever invoked his right to counsel or that after he did so, Defendant denied Plaintiff's ability to communicate with an attorney.

b. Conditions of Confinement

Plaintiff alleges he was unlawfully placed in solitary confinement and was denied more than an hour of outdoor exercise per day. Claims alleging unlawful conditions of confinement in violation of the Eighth Amendment "must be particularized to the facts of the case" and not "defined at a high level of generality." *White v. Pauly*, — U.S. —, 137 S. Ct. 548, 552, 196 L.Ed.2d 463 (2017).

Solitary confinement is not, in and of itself, unconstitutional. *Hamner,* 937 F.3d at 1175. And there is no constitutional right to more than an hour of exercise per day. *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996) (finding three hours of exercise per week did not violate prisoner's constitutional rights). While an inmate might allege that a deprivation of exercise is unconstitutional, Plaintiff has not pleaded any facts that would establish Defendant was deliberately indifferent to his needs, that all exercise was prohibited, or that other extenuating circumstances did not account for Plaintiff's limited access to recreational areas.

Plaintiff's amended complaint alleges no facts to support a claim that Defendant violated clearly established statutory or constitutional rights of which a reasonable person would have known or that Plaintiff was prejudiced by the alleged violations. *Ransom*, 790 F.3d at 810-11 (8th Cir. 2015). Defendant is entitled to qualified immunity, and Plaintiff's claims will therefore be dismissed.

*Id.* at *5-8.

In the present action, Stanko likewise alleges that Brewer "is the sheriff for Scottsbluff [*sic*] County" and "is the ultimate decision maker and manager of the Sheridan County Jail." (Filing 1 at 2-3.) Stanko sues Brewer in his individual capacity and again complains about alleged interference with his legal defense and

7

conditions of confinement at the Sheridan County Jail. Stanko alleges, among other things, that:

> 4.   The Sheridan County Jail is and has been overcrowded in violation of the 8th Amendment.

> 5.   The Plaintiff had to sleep on the floor due to overcrowding.

> …

> 8.   The Sheridan County Jail does not conform to the U.S. Supreme Court housing mandates and/or the Federal Jail Standards.

> …

> 17.   The Sheridan County Jail does not have a law library on equal footing as the Sheridan County Attorney.

> 18.   Jeff Brewer alledges [*sic*] he only has room to allow prisoner legal research to his bookself [*sic*] for ½ hour each day.

> 19.   Jeff Brewer has retaliated and punished the Plaintiff by throwing the Plaintiff in "the hole" (solitary isolation) for filing lawsuits.

> 20.   Jeff Brewer has retaliated and punished the Plaintiff by throwing the Plaintiff in "the hole" for taking his prescribed pills.

> 21.   Solitary isolation is where a prisoner is isolated for 24 hours a day and not allowed to exercise in a small cell or communicate with anyone including his lawyer.

> …

> 37.   Brewer confiscated the Plaintiff's legal files in violation of the 5th and 14th Amendments.

(Filing 1 at 5, 9.) Because each of these claims against Brewer was asserted, or could have been asserted, in the prior litigation, which resulted in a judgment of dismissal with prejudice, Stanko is precluded from asserting these claims in the present action.

"The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008). To determine the preclusive effect of a prior federal-court judgment, courts must look to federal common law. *Id.*

> Under federal common law, the doctrine of ... claim preclusion[ ] applies when "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action."

*Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018) (quoting *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998)). "Whether two claims are the same for res judicata purposes depends on whether the claims arise out of the same nucleus of operative fact or are based upon the same factual predicate." *Elbert*, 903 F.3d at 782 (quoting *Murphy v. Jones*, 877 F.2d 682, 684-85 (8th Cir. 1989)). Thus, claims which a plaintiff did not assert, but could have asserted, in the first action may be barred by the doctrine of claim preclusion. *Elbert*, 903 F.3d at 782.[4]

Each of these claim preclusion elements is satisfied in this case.[5] The fact that Stanko has filed an appeal from the dismissal of the prior litigation is immaterial. "It

---

[4] "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1,(1984). A party is precluded from litigating such a matter in a subsequent case, "whether or not the issue arises on the same or a different claim." *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001). Issue preclusion has five elements: "(1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment." *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007) (quoting *Anderson v. Genuine Parts Co., Inc.*, 128 F.3d 1267, 1273 (8th Cir. 1997)).

[5] The Court may dismiss an action sua sponte for res judicata if the court is on notice that it has previously decided the issue. *Jones v. Carter*, No. 8:20CV62, 2020

9

is well established in the federal courts that 'the pendency of an appeal does not diminish the *res judicata* effect of a judgment rendered by a federal court.'" *In re Ewing*, 852 F.2d 1057, 1060 (8th Cir. 1988) (quoting *Hunt v. Liberty Lobby, Inc.,* 707 F.2d 1493, 1497-98 (D.C.Cir. 1983)).

## C. Claims Against Sheridan County

Although Stanko is precluded from suing Brewer in his individual capacity for alleged deprivations of Stanko's constitutional rights while he was a prisoner at the Sheridan County jail, the res judicata doctrine does not necessarily preclude Stanko from suing Sheridan County. *Cf. Headley v. Bacon,* 828 F.2d 1272, 1277-80 (8th Cir. 1987) (discussing privity with reference to individual and official capacity claims). However, a municipality (or other governmental unit, such as a county) can be held liable under section 1983 only if there is an unconstitutional act by a municipal employee. *Webb v. City of Maplewood*, 889 F.3d 483, 487 (8th Cir. 2018). Because the court determined in the prior litigation that Brewer did not violate Stanko's constitutional rights by confiscating his legal files, or by placing Stanko in solitary confinement and thereby denying Stanko the ability to exercise or to communicate with his lawyer, those determinations preclude Stanko from seeking to recover damages from Sheridan County for these claimed deprivations, which allegedly were caused by Brewer while acting as the "ultimate decision maker and manager of the Sheridan County Jail."

Stanko's complaint about alleged overcrowding at the Sheridan County Jail could be attributed to policymakers other than Sheriff Brewer. Stanko alleges, for example, that "Sheridan County Commissioners have conspired with Jeff Brewer to purchase several $50,000 Ford pickups and automobiles, rather than spend the

---

WL 5203456, at *4 (D. Neb. Sept. 1, 2020); s*ee White v. Simpson*, No. 2:19-CV-02111, 2019 WL 4261118 at *1 (W.D. Ark, Sept. 9, 2019); *Przybylski v. North Dakota*, No. 3:19-cv-279, 2020 WL 2029972 at *2 (D. ND, April 6, 2020). This is "fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Arizona v. California*, 530 U.S. 392, 412 (2000), *supplemented*, 531 U.S. 1 (2000).

necessary funds to conform to United States Supreme Court jail housing mandates/ standards." (Filing 1, ¶ 15.)[6] However, there are not sufficient facts alleged to demonstrate that Sheridan County has an unconstitutional policy or custom of jail overcrowding.[7] Absent such facts, no plausible claim for relief is stated.

Because Stanko is no longer a prisoner at the Sheridan County Jail, his request for injunctive and declaratory relief regarding the alleged overcrowding may also be dismissed as moot. *See Stanko*, 2020 WL 5982062, at *4; *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (prisoner's claim for injunctive relief to improve prison conditions is moot if he is no longer subject to those conditions; for the same reason, prisoner does not have standing to seek declaratory relief, but prisoner does retain standing to bring claims for monetary damages). Stanko's damage claim is not moot, but the Prison Litigation Reform Act provides that "[n]o Federal civil action

---

[6] Stanko's conclusory allegation that the Commissioners "conspired" with Brewer is not sufficient. To state a § 1983 conspiracy claim, a plaintiff must allege "an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage. A plaintiff must allege with sufficient particularity and demonstrate with specific material facts that the parties reached some agreement and conspired together to deprive plaintiff of a federal right." *Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988).

[7] As a municipal defendant may only be liable under section 1983 if its official "policy" or "custom" caused a violation of the plaintiff's constitutional rights. *Doe By & Through Doe v. Washington Cnty.*, 150 F.3d 920, 922 (8th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). An "official policy" involves a deliberate choice to follow a course of action made from among various alternatives by an official who has the final authority to establish governmental policy. *Jane Doe A By & Through Jane Doe B v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 645 (8th Cir. 1990) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). To establish the existence of a governmental "custom," a plaintiff must prove: 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation. *Jane Doe*, 901 F.2d at 646.

may be brought by a prisoner confined in a jail … for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Stanko does not allege that he suffered any physical injury from sleeping on the floor.[8]

Stanko's complaint about inadequate library facilities at the Sheridan County Jail might also be attributed to policymakers other than Sheriff Brewer, but, again, there are no facts alleged to show that Sheridan County had an unconstitutional policy or custom. As with the overcrowding claim, Stanko's request for declaratory and injunctive relief is also moot. *See, e.g., Keup v. Leftler*, No. 8:17CV117, 2017 WL 3601229, at *2 (D. Neb. Aug. 21, 2017) (law-library conditions claim mooted by plaintiff's release from jail). Finally, Stanko does not claim to have suffered any actual injury, which is necessary to state a claim for a Sixth Amendment violation. *See Stanko*, 2020 WL 5982062, at *7.

> It is well established "that prisoners have a constitutional right of access to the courts" which "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 821 & 828 (1977). However, to recover for the deprivation of this constitutional right, "the inmate ... must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). In other words, to prevail on an access-to-the-courts claim, a prisoner must establish that she sustained an "actual injury" by demonstrating "that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353.

---

[8] A prisoner cannot recover compensatory damages without a prior showing of physical injury, but can seek nominal damages of $1.00 without such a showing. *See Royal v. Kautzky,* 375 F.3d 720, 723-24 (8th Cir. 2004). Punitive damages might also be recoverable, but only when a defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to protected federal rights. *Id.* Stanko's Complaint contains no such allegation.

"Actual injury" is not satisfied by demonstrating "just any type of frustrated legal claim." Rather, inmates must only be provided the tools required to pursue direct appeals from convictions for which they are imprisoned, habeas petitions, and actions under 42 U.S.C. § 1983 to vindicate their basic constitutional rights. *Id.* at 354-55 (prisons may not impede an inmate's ability to "attack their sentences, directly or collaterally, and ... challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.").

To state an access-to-the-courts claim, "a prisoner must establish [that] the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Holt v. Howard*, 806 F.3d 1129, 1133 (8th Cir. 2015) (quoting *Williams v. Hobbs*, 658 F.3d 842, 851-52 (8th Cir. 2011) ). "[T]he underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002). The "lost" claim occasioned by the denial of an inmate's access to the courts must "be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id.*

*Nelson v. Hjorth*, No. 8:18CV88, 2018 WL 2050571, at *8 (D. Neb. May 2, 2018) (dismissing plaintiff's access-to-the-courts claim for failure to allege any facts to establish actual injury).

## D. Claims Against Sheridan County Attorney

Stanko complains that the county attorney's office was moved from the courthouse to a downtown location in Rushville, which serves as a second office for Aaron Conn's law firm. (Filing 1, ¶¶ 6, 7, 9-14.) He also complains that Conn's partners serve as deputy county attorneys. (Filing 1, ¶ 16.) These claims do not involve any alleged deprivation of Stanko's constitutional rights.

13

Stanko additionally alleges, however, that "Aaron Conn conspired with Jeff Brewer[9] to throw the Plaintiff in jail in violation of the 8th Amendment in maliciously prosecuting the Plaintiff." (Filing 1, ¶ 22.) More specifically, the county attorney allegedly violated "the cruel and unusual punishment clause by filing all of the charges before Brewer's secretary and not the 4th Amendment requirement of the oath under penalty of perjury before the judicial branch." (Filing 1, ¶ 23.)

"It is well established in this circuit that '[a]n action for malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury.'" *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000) (quoting *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 977 (8th Cir. 1993)). "[M]alicious prosecution can form the basis of a § 1983 suit only if defendant's conduct also infringes some provision of the Constitution or federal law." *Sanders*, 984 F.2d at 977. Liberally construing Stanko's allegations, he is asserting there was a procedural due process violation because the criminal complaint was defective.

The court takes judicial notice that on October 21, 2019, Stanko was charged in the County Court of Sheridan County, Nebraska, in Case No. CR19-285, with third degree assault and disturbing the peace; that Stanko was convicted of both charges on June 22, 2020; and that Stanko thereafter filed an appeal to the District Court of Sheridan County, Nebraska, in Case No. CR20-27; that on September 15, 2020, the District Court suspended Stanko's sentence during the pendency of the appeal; and that the appeal remains pending. *See Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (court may take judicial notice of judicial opinions and public records).[10]

The abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), directs that federal courts must not interfere with, or intervene in, ongoing criminal proceedings in state court. Absent extraordinary circumstances, this court must

---

[9] The conspiracy allegation is insufficient because no facts are alleged to show that Conn and Brewer reached an agreement to deprive Stanko of a constitutional right. See note 6, *supra*.

[10] Nebraska's judicial records may be retrieved online through the JUSTICE site, https://www.nebraska.gov/justice/case.cgi.

14

abstain from exercising jurisdiction over any civil action that challenges Stanko's ongoing criminal proceedings. *See Hudson v. Campbell*, 663 F.3d 985, 987 (8th Cir. 2011) ("The *Younger* abstention doctrine derives from notions of federalism and comity. *Younger* itself held that, absent extraordinary circumstances, federal courts should not enjoin pending state criminal prosecutions."). Stanko has alleged no such extraordinary circumstances.

Furthermore, the United States Supreme Court has held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *see also Wolff v. McDonnell*, 418 U.S. 539, 554 (1974); *Heck v. Humphrey*, 512 U.S. 477, 481 (1994); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). "He must seek federal habeas corpus relief (or appropriate state relief) instead." *Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). A § 1983 action cannot be maintained until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. This line of cases establishes that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Dotson*, 544 U.S. at 81-82 (emphasis in original).

And, finally, "[p]rosecutors are entitled to absolute immunity from civil liability under § 1983 when they are engaged in prosecutorial functions that are 'intimately associated with the judicial process.'" *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) (quoting *Anderson v. Larson*, 327 F.3d 762, 768 (8th Cir. 2003)). The filing of criminal charges is an action intimately associated with the judicial phase of the criminal process, and absolute immunity applies "even if the prosecutor's steps to initiate a prosecution are patently improper." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016). "Allegations of unethical conduct and improper motive in the performance of prosecutorial functions do not defeat the protection of absolute immunity." *Id.*

15

### E. Claims Against Scotts Bluff County Sheriff

Stanko alleges that "Jeff Brewer conspired with Mark Overman to give the Plaintiff 'a dose of gasoline therapy' by sending the Plaintiff to the Scottsbluff [*sic*] County Jail." (Filing 1, ¶ 34.) Stanko describes "gasoline therapy" as "retaliation and punishment by transferring the Plaintiff by way of one of Brewer's new Ford pickups away from the Plaintiff's family, friends, and business for filing lawsuits." (Filing 1, ¶ 35.) The date of Stanko's transfer to the Scotts Bluff County Jail is not alleged, but the transfer presumably occurred sometime after Stanko began serving his sentence for the convictions in the County Court of Sheridan County, Case No. CR19-285. As stated previously, Stanko was a prisoner at the Scotts Bluff County Jail when this § 1983 action was filed on July 23, 2020. Stanko further alleges:

33.   Mark Overman is the ultimate decision maker and manager of the Scottsbluff [sic] County Jail.

…

36.   When the Plaintiff arrived at Overman's jail the Plaintiff was immediately thrown in solitary isolation, aka "the hole" without administrative due process and arbitrarily classified as in protective custody.

…

38.   The hole or solitary isolation is used by defendants Brewer and Overman to punish unruley [*sic*] (recalcitrant) prisoners for jail infractions.

39.   The hole is 24 hrs. lockdown with the fluorescent lights turned on for 24 hours.

40.   The Plaintiff committed no jail infraction that justified to immediately throw the Plaintiff in the hole.

41.   Brewer and Overman conspired to punish the Plaintiff in retaliation for suing Sheriffs in their fraternal brotherhood by

16

throwing the Plaintiff in the hole; leaving the lights on for 24 hours; and classifying the Plaintiff as protective custody.

42. Overman did not give the Plaintiff one hour of the constitutional and United States Supreme Court mandated outside exercise.

43. Overman further tortured the Plaintiff by waking up and ordering the Plaintiff to leave the cell for only one hour at midnight.

44. This one hour out of "the hole" the Plaintiff had his choice to shower, make phone calls at midnight when everyone was asleep; or use the computer law library that does not meet the requirements stated in Bounds v. Smith.

45. The Plaintiff was not given the opportunity to shower until Friday or on the 4th day of arrival.

46. The Plaintiff could not use the computer law library because he was taken to another "pod" and could not log-in with his prisoner identification.

47. The Plaintiff is a diabetic and was fed starchs [*sic*] and carbs, i.e., breads, potatoes, corn, margarine, corn flakes and tortured and severely punished.

48. Overman further punished the Plaintiff by leaving the lights turned on for 24 hours day and night in "the hole."

49. Overman would not respond to the administrative complaints sent to him by the Plaintiff.

50. The above facts violate the cruel and unusual punishment clause of the 8th Amendment.

51. The defendants Overman and Brewer ignored the Plaintiff's demand to have access to his confiscated legal files.

52. The alleged law library on the screen has no desk to prepare notes from information that could be gathered.

53. The Plaintiff does not have equal access to a law library as the prosecution in violation of the 4ᵗʰ, 5ᵗʰ, 6ᵗʰ and 14ᵗʰ Amendment rights in order to appeal.

(Filing 1 at 8-11.)

For the same reasons discussed above in connection with Stanko's prior litigation against Sheriff Brewer, Stanko's allegations regarding confiscated file materials and inadequate legal research facilities fail to state a claim upon which relief may be granted. Stanko also claims to have been subjected to cruel and unusual punishment, but the facts alleged do not support an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (explaining that, to state a plausible Eighth Amendment claim, a prisoner must have suffered "extreme deprivations" that denied "the minimal civilized measure of life's necessities"); *Phillips v. Norris,* 320 F.3d 844, 848 (8th Cir. 2003) (holding that thirty-seven days in punitive isolation, which included the suspension of contact visitation, exercise privileges, and religious services, was not an Eighth Amendment violation); *Brown v. Nix*, 33 F.3d 951, 952 (8th Cir. 1994) (finding no Eighth Amendment violation when a prisoner received "nine years of administrative segregation for disciplinary infractions"); *Jones v. Mabry*, 723 F.2d 590, 595 (8th Cir. 1983) (stating that there is no Eighth Amendment violation unless the conditions an inmate endures in segregation are "cruel and barbaric").

Overman's alleged failure to respond to Stanko's administrative complaints is not a constitutional violation. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (holding that inmates have no "liberty interest" in the processing of their grievances, such as would support § 1983 claim for prison officials' failure to pick up inmate's completed grievance forms or investigate inmate's grievances).

Stanko claims he was placed in solitary confinement in retaliation for "suing Sheriffs in their fraternal brotherhood," which, although not identified as such, may be construed as a claim arising under the First Amendment.[11] "To prevail on a §

---

[11] Importantly, the Eighth Circuit has held that the provision of the PLRA which bars prisoners from recovering for mental or emotional injuries while

1983 claim for retaliation in violation of the First Amendment, [Stanko] must demonstrate (1) that he engaged in a protected activity; (2) that the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013). "In brief, the plaintiff must show the official took the adverse action because the plaintiff engaged in the protected speech." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012) (quoting *Revels v. Vincenz,* 382 F.3d 870, 876 (8th Cir. 2004)). "The retaliatory conduct itself need not be a constitutional violation; the violation is acting in retaliation for 'the exercise of a constitutionally protected right.'" *Spencer v. Jackson Cty.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Cody v. Weber,* 256 F.3d 764, 771 (8th Cir. 2001)).

The first element appears satisfied here. *See Haynes v. Stephenson,* 588 F.3d 1152,1155-56 (8th Cir. 2009) ("The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." (quotation and citation omitted)); *Goff v. Burton*, 7 F.3d 734, 736 (8th Cir. 1993) ("Prison officials may not retaliate against an inmate for filing legal actions in the exercise of his constitutional right of access to the courts."); *but cf. Eggenberger v. W. Albany Twp*., 820 F.3d 938, 943 (8th Cir. 2016) ("Although filing a lawsuit is generally a protected activity under the First Amendment right to petition for the redress of grievances, the Supreme Court has long held 'baseless litigation is not immunized by the First Amendment right to petition.'" (quoting *Bill Johnson's Restaurants, Inc. v. N.L.R.B.,* 461 U.S. 731, 743 (1983)). The second element is generally a jury question. *See Bennie v. Munn*, 822 F.3d 392, 399 n. 2 (8th Cir. 2016) ("[I]n most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Id.* at 398 (quoting *Bell v. Johnson,* 308 F.3d 594, 603 (6th Cir. 2002)). As to the final element, however, no facts are pleaded to support Stanko's assertion that Overman placed him in solitary confinement "for suing Sheriffs."

---

incarcerated without a prior showing of physical injury, applies to "all federal actions brought by prisoners," including actions alleging violation of the First Amendment. *Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir. 2012); *Royal v. Kautzky,* 375 F.3d 720, 723 (8th Cir. 2004).

19

The Eighth Circuit has held in the context of employment discrimination and retaliation that "it is not appropriate to require a plaintiff to plead facts establishing a prima facie case" under the *McDonnell Douglas* burden-shifting framework.[12] *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 372 (8th Cir. 2017). However, the elements of a prima facie case are relevant to a plausibility determination. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) ("[T]he elements of a prima facie case … are part of the background against which a plausibility determination should be made" and "may be used as a prism to shed light upon the plausibility of the claim"); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("While the 12(b)(6) standard [for a motion to dismiss] does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim."). "While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, *the complaint must include sufficient factual allegations to provide the grounds on which the claim rests*." *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) (emphasis in original; quoting *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc)). Stanko's vague allegations about "suing Sheriffs" and a "fraternal brotherhood" do not meet this plausibility standard. Nor are sufficient facts alleged to state a plausible conspiracy claim. See n. 6, *supra*.

## IV. CONCLUSION

Stanko's Complaint fails to state a claim upon which relief may be granted, and is subject to preservice dismissal under 28 U.S.C. § 1915A. On its own motion, however, the court will give Stanko 30 days to file an amended complaint.

_____

[12] Whether the same pleading standard applies to First Amendment retaliation claims has not been specifically addressed by the Eighth Circuit. In addition, Eighth Circuit case law suggests two possible burden-shifting frameworks for evaluating First Amendment retaliation claims: *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973) and *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *See DePriest v. Milligan*, 823 F.3d 1179, 1187 n. 4 (8th Cir. 2016). Under either framework, the plaintiff must first establish a prima facie case.

IT IS THEREFORE ORDERED:

1.      Plaintiff shall have 30 days in which to file an amended complaint that states a claim upon which relief may be granted. **Failure to file an amended complaint within 30 days will result in the court dismissing this case without further notice to Plaintiff.**

2.      Plaintiff's amended complaint shall restate any applicable allegations of the current Complaint (Filing 1) and any new allegations. Failure to consolidate all claims into one document may result in the abandonment of claims. Plaintiff is warned that an amended complaint will supersede, not supplement, his Complaint.

3.      The court reserves the right to conduct further review of Plaintiff's claims pursuant to 28 U.S.C. § 1915A in the event he files an amended complaint.

4.      The clerk of the court is directed to set the following pro se case management deadline: "December 14, 2020: check for amended complaint."

Dated this 13th day of November, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge